# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **TERESA SCARPULA,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-05-BE-1324-W** |
| | ] | |
| **BAYER CORPORATION** | ] | |
| **DISABILITY PLAN, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This case came before the court on Plaintiff's Request for Judgment on "Own Occupation" Benefits Pursuant to Rule 54(b) (doc. 52), in which she requests a final judgment of disability benefits, interest, attorney's fees, and costs.[1]  For the reasons that follow, the court will enter final judgment by separate order, including $6,123.50 in prejudgment interest, $54,498.00 in attorney's fees, and expenses of $250.00.

## I.  BACKGROUND

Plaintiff Teresa Scarpulla brought this action under the Employee Retirement Income Security Act ("ERISA") seeking review of Defendant Bayer Corporation Disability Plan's denial of her application for long-term disability ("LTD") benefits.  The Plan's LTD disability benefits are bifurcated into (1) an initial six-month period of disability defined as the inability to perform

---

[1] Plaintiff's counsel did not submit documentation regarding his fees with the current motion, but instead incorporates an earlier motion for attorney's fees (doc. 49), which the court previously denied as premature.  Having decided that the issue is now ripe, *see* doc. 57, the court will review doc. 49 in connection with the current motion.  Defendant expressly responds to both docs. 49 and 52 in its opposition to Plaintiff's request for interest, attorney's fees, and costs.  (*See* doc. 58).

one's "own occupation;" and (2) "total disability" thereafter, defined as the inability to perform "any occupation."

On September 27, 2007, this court concluded that the Plan's denial of Plaintiff's request for "own occupation" LTD benefits was arbitrary and capricious.  *See* docs. 43 & 44.  Although the court concluded that the Plan operated under a conflict of interest at the time of its decisions regarding Scarpulla's application, the court nonetheless applied the more deferential arbitrary and capricious standard as if the conflict had not existed.  As discussed at length in the court's memorandum opinion (doc. 43), the court determined that the Plan's denial of Scarpulla's application was arbitrary and capricious for several reasons, including that the Plan (1) had focused on unknown etiology and ignored numerous medical opinions that Scarpulla required, at a minimum, rehabilitation to determine whether she could return to work; (2) ignored ongoing vocational rehabilitation that would determine the scope of Scarpulla's ability to work, if any; (3) relied upon peer reviews that mischaracterized the opinions of treating sources and/or were wholly conclusory; and (4) relied upon peer reviews applying the "total disability" standard rather than the "own occupation" standard.

Having determined that Plaintiff was entitled to LTD benefits for the initial six-month "own occupation" LTD period, the court remanded the case to the Plan to determine the amount of damages due because no evidence regarding the amount of damages had been submitted to the court.  The court did not review a decision regarding "total disability" because it had not been made.

On October 5, 2007, Plaintiff moved to amend the court's order to award attorney's fees and costs.  Plaintiff supplemented this motion with additional evidence and documentation on October 16, 2007.  On that same day, the court denied Plaintiff's request for attorney's fees as

-2-

premature.  *See* doc. 50.  Although the court had labeled its September 27, 2007 order "final," the court acknowledged on October 16, 2007, that its earlier order did not "end[] the litigation on the merits and leave nothing for the court to do but execute judgment."  Doc. 50 at 1-2 (quoting *Shannon v. Jack Eckerd Corp.*, 55 F.3d 561, 563 (11th Cir. 1995)).

The litigation has now ended;  the Plan has determined that the net benefits to which Scarpulla is entitled for the "own occupation" LTD period is $20,411.67.  Accordingly, Plaintiff now requests entry of final judgment in that amount plus interest at 8% *per annum*, fees of $55,596.00, and expenses of $1,290.80.  Defendant opposes all three amounts, and contends that any prejudgment interest the court decides to award should be, at most, at the rate of 2.08% pursuant to 28 U.S.C. § 1961.

## II.  DISCUSSION

### A.     Prejudgment Interest

The court finds that an award of prejudgment interest is appropriate to fully compensate Scarpulla for the lengthy denial of the full use of money to which she was lawfully entitled and to prevent unjust enrichment to the Plan.  *See Engelhardt v. Paul Revere Life Ins. Co.*, 77 F. Supp. 2d 1226, 1236 (M.D. Ala. 1999).  Scarpulla requests that the court award prejudgment interest at the rate of 8% *per annum* for the past-due ERISA benefits.  Plaintiff thus requests aggregate, non-compounded interest of $136.07 per month since April 2003.  Plaintiff cites nothing in support of the 8% rate, but simply notes that "[t]he award of an amount of prejudgment interest in an ERISA case is a matter 'committed to the sound discretion of the trial court.'" (Doc. 52, at ¶ 1 n. 1) (quoting *Smith v. Am. Int'l Life Assurance Co. Of N.Y.*, 50 F.3d 956, 958 (11th Cir. 1995)).

The Plan, on the other hand, argues that 2.08% is the appropriate interest rate under 28

U.S.C. § 1961.  That statute provides that post-judgment interest should be calculated "at a rate equal to the weekly average 1-year constant maturity treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  28 U.S.C. § 1961(a).  The rate applicable the week preceding Plaintiff's motion was 2.08%.  The rate applicable today is 1.88%.  Defendant cites no authority that this rate should apply to prejudgment interest in ERISA cases.

Although some circuits have approved the use of § 1961 for prejudgment interest, in the Eleventh Circuit, "district courts are not required to use section 1961(a) in computing such interest." *Smith*, 50 F.3d at 958.  Rather, the appropriate amount of interest is within the discretion of the district court. *Id.*  In setting the appropriate prejudgment interest on federal claims, district courts may look to state law for guidance. *See, e.g.*, *id.* at 957 (approving the district court's use of Georgia's statutory interest rate).

Under Alabama law, the typical prejudgment interest rate is 6%.  Ala. Code § 8-8-1.  Nevertheless, the Eleventh Circuit has approved use of Ala. Code § 27-1-17(b), which provides 18% *per annum* for an insurer's wrongful denial of a claim, "to fill a gap in ERISA law." *Smith*, 50 F.3d at 358 (quoting *Nightingale v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995)).  As the Honorable William M. Acker has recognized, the 18% rate may be appropriate for the denial of medical benefits, but not disability benefits. *See Burroughs v. BellSouth Telecomm., Inc.*, 446 F. Supp. 2d 1294, 1302-03 (N.D. Ala. 2006), *vacated on other grounds*, 248 F. App'x 64 (11th Cir. 2007).  Thus, this court concludes that "the proper rate is the [Alabama Code's] traditional, tried-and-true 6% *per annum* that applies to all sums due under a contract where there is no rate fixed by the contract itself." *See id.* at 1302.  The court's final order will provide for $6,123.50 in prejudgment interest, representing 6% *per annum* for the sixty

-4-

months that have passed since April 2003.  The rate prescribed by 28 U.S.C. § 1961 will apply to

<u>post-judgment</u> interest.

###    B.    Attorney's Fees and Expenses

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and

costs of action to either party."  29 U.S.C. § 1132(g)(1).  This does not create a presumption in

favor of attorney's fees, and, in fact, the Eleventh Circuit Court of Appeals has "not infrequently

affirmed denial of attorney's fees where the ERISA beneficiary prevails in the district court on a

claim for benefits."  *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1269 (11th Cir. 2008).

Although the parties have agreed on almost nothing in nearly three years of litigation,

they do agree that the court should use the following five factors as guideposts to determine

whether to award attorney's fees in this case:

> (1) the degree of the opposing parties' culpability or bad faith; (2)
> the ability of the opposing parties to satisfy an award of attorney's
> fees; (3) whether an award of attorney's fees against the opposing
> parties would deter other persons acting under similar
> circumstances; (4) whether the parties requesting attorney's fees
> sought to benefit all participants and beneficiaries of an ERISA
> plan or to resolve a significant legal question regarding ERISA
> itself; (5) [and] the relative merits of the parties' positions.

*Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001) (quoting *Freeman v.*

*Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993)) (addition in *Wright*).  Of course, the

parties' analysis of these factors diverges greatly, so the court will examine each in turn.

###    1.    Culpability or Bad Faith

The court first notes that this factor includes the disjunctive "or" rather than the

conjunctive "and."  Thus, contrary to Defendant's argument, the absence of bad faith is <u>not</u>

detrimental to a plaintiff's request for attorney's fees.  *Wright*, 270 F.3d at 1345.  Indeed, district

courts in this Circuit have time and again awarded attorney's fees in the absence of bad faith.
*See, e.g.*, *Brand v. AT&T Broadband Disability Plan*, 2008 WL 1766906, at *3 (M.D. Fla. Apr. 15, 2008) (finding culpability where plan mistakenly believed it could not grant further reconsideration, thus "forc[ing] Brand to file a federal suit to seek relief"); *Anderson v. Unum Life Ins. Co. Of Am.*, 2007 WL 604728, at *3-6 (M.D. Ala. Feb. 22, 2007) (finding culpability where inadequate investigation prevented impartial determination). The Court of Appeals has affirmed a district court's award of attorney's fees where the defendant's conduct, although not malicious or in bad faith, constituted "carelessness" and was therefore "culpable." *See Wright*, 270 F.3d at 1345.

The facts of this case demonstrate the same type of "carelessness" that satisfies the culpability prong of this factor. The peer reviewers from whom the Plan solicited medical opinions in this case either provided opinions that were wholly conclusory, applied the wrong standard for disability, or mischaracterized the opinions of treating sources. The Plan's blind reliance on the peer reviews was careless. Similarly, despite several opinions that Scarpulla should return to work <u>only</u> after <u>ongoing</u> rehabilitation and assessment, the Plan concluded that she could return to work immediately. Finally, the court determined that a conflict of interest existed because at least one individual who reviewed Scarpulla's claim not only knew that the trust which funded LTD benefits was nearly depleted, but he was the Bayer corporate officer charged with ensuring the trust's funds were adequate. Allowing (1) the trust funds to dwindle to insufficient levels and (2) allowing a interested corporate officer to review claims were likewise "careless" actions. For these reasons, the court concludes that, although the Plan did not act in bad faith, it was culpable.

**2.      Ability to Satisfy an Award of Attorney's fees**

Defendant's only argument as to this factor is that Plaintiff has not offered evidence

regarding the Plan's ability to satisfy an award of attorney's fees.  Defendant is correct that

underline neither party has submitted evidence of the Plan's ability or inability to pay Plaintiff's attorney's

fees.  However, this court may take judicial notice of a fact "capable of accurate and ready

determination by resort to sources whose accuracy cannot be reasonably questioned," Fed. R.

Evid. 201(b), including the contents of newspapers and websites.  *See Lil' Joe Wein Music, Inc.*

*v. Jackson*, 2006 WL 5428227, at *5 (S.D. Fla. Oct. 27, 2006) (taking judicial notice of

newspaper articles); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1084 n. 2 (C.D. Cal. 2001)

(taking judicial notice of defendant's website under Fed. R. Evid. 201).

Just last week, Bayer AG, the corporate group of which Bayer Corporation is a member,

announced that "2007 was Bayer's most successful year to date."

http://www.bayer.com/en/News-Detail.aspx?id=10789 (Apr. 25, 2008).  In addition, the

*Washington Post* reported that, during the first quarter of 2008, Bayer AG's earnings increased

9% to more than $2.3 billion.  *See* Mantik Kusjanto, *Strong demand lifts Bayer past profit*

*estimates*, *Wash. Post*, Apr. 24, 2008, *available at*

http://www.washingtonpost.com/wp-dyn/content/article/2008/04/24/AR2008042400743.html.

Bayer's first quarter performance is also posted on its website at

http://www.bayer.com/en/News-Detail.aspx?id=10777.  As noted several times during the

current proceeding, Defendant's trust is funded by Bayer Corporation and some of its affiliates.

Based upon these sources, the court concludes that Bayer's current robust financial

condition is "capable of accurate and ready determination by resort to sources whose accuracy

cannot be reasonably questioned," including Bayer's financial documents posted on its own

-7-

website.  Although these earnings figures are for Bayer AG – the corporate family – Bayer

Corporation is a part of that family and, along with some of its affiliates, funds the Plan's

disability benefits trust.  The court concludes, therefore, that Defendant has the ability to satisfy

the attorney's fees requested.

### 3. Deterrence

Defendant argues that this case presented a unique, individual, factually-specific claim

and, therefore, the "deterrence" factor weighs against a fee award.  In fact, the errors identified by

the court were much broader.  For instance, the Plan applied the <u>wrong</u> standard and relied upon

wholly conclusory peer reviews.  These errors are not specific to Scarpulla's individual medical

condition, but could apply to any disability applicant.  This court's judgment in this case provides

the Plan an incentive to handle applications thoroughly and should deter the Plan from such

conclusory review in the future.  Accordingly, the court concludes that deterrence weighs in favor

of attorney's fees.[2]

### 4. Benefit to All Participants or Significant Legal Question

Plaintiff does not contend that this case presented any significant legal question regarding

ERISA itself, and this court concludes that it did not.  On the other hand, the court concludes that

the case will benefit all plan participants for the same reasons that it will deter similar cases in

the future.  All plan participants are benefitted by the Plan's proper application of the correct

---

[2] To the extent Plaintiff argues that the court's conclusion that a conflict of interest existed at the time of Scarpulla's application and administrative appeal weighs in her favor on the third and fourth factors – deterrence and benefit to all participants – the court disagrees.  The court concluded only that a conflict of interest existed <u>at the time the Plan reviewed Scarpulla's application and appeal of "own occupation" benefits</u>.  The court did not hold that the very structure of the Plan created an inherent or perpetual conflict.  Because the court cannot conclude that a conflict of interest continues to exist at this time, it concludes that this fact is neutral as to the third and fourth factors.

standards to disability applications.  Again, the Plan's errors were not applicant-specific and could occur as to any plan participant.

### 5.    Relative Merits of the Parties' Positions

Because the court concluded above that the Plan's conduct was culpable, "this factor need not be consulted."  *See Blank v. Bethlehem Steel Corp.*, 738 F. Supp. 1380, 1383 (M.D. Fla. 1990).  Nonetheless, the relative merits of the parties' positions also weigh in favor of an award of attorney's fees.  Plaintiff prevailed.  In fact, she successfully overcame the <u>highly deferential</u> arbitrary and capricious standard of review, in large part because of the Plan's reliance on wholly conclusory peer reviews applying the wrong disability standard.  Defense counsel ably advanced a number of arguments regarding Scarpulla's disability, which the Plan claims now undermines Plaintiff's request for attorney's fees.  Those arguments, however, are distinct from the question of whether the Plan's decision, based on the evidence in the administrative record, was arbitrary and caprcious.  Defending the Plan's application of the wrong disability standard was meritless.

Having considered all the factors, the court concludes that Plaintiff's counsel is due attorney's fees and costs for his services.  The court must now determine if counsel's requested fees and expenses are reasonable.

### 6.    Amount of Fees and Expenses

To determine whether an attorney's requested fees are reasonable, the court must apply the "lodestar" method to calculate the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed.  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir.2000).  The Plan does not attack the reasonableness of Plaintiff's requested fees and expenses, but instead focuses on Plaintiff counsel's failure to comply with this court's Uniform Initial Order by not entering time in 0.1 hour increments; including insufficient

detail in some time entries; not enumerating the specific charges in the total requested expenses; and not certifying that records were reviewed no less frequently than monthly.

The court first notes that Plaintiff counsel's failure to round his time to the nearest 0.1 of an hour actually <u>benefits</u> Defendant because Plaintiff rounded most entries to the nearest one-hundredth; thus, for example, he requests payment for 0.33 hours rather than 0.4. The court will not punish counsel for being <u>more</u> thorough than the Uniform Initial Order requires. The court also will not fault Plaintiff counsel in this case for failure to certify that he reviewed time on a monthly basis. Plaintiff's motion for attorney's fees suggests that this case was staffed with one attorney and one paralegal. Of the total 189.89 hours claimed, only six did not belong to Plaintiff's sole attorney. Thus, Plaintiff counsel was not managing hoards of lawyers and paralegals in this litigation. Plaintiff counsel, as an officer of this court, has signed a pleading in which he represents to the court that this time is accurate.

Defendant's remaining objections are well taken. Although Defendant did not identify which time entries to which it objects, the court independently reviewed all time entries and concludes that the following entries contain insufficient detail: 10-10-05; 11-22-05; and 12-29-05. Accordingly, the court will not award fees for those hours, which total 3.66 hours. In addition, Plaintiff's counsel will not be awarded the requested expenses because he has failed to itemize those expenses. The court assumes that $250 of the requested expenses is the filing fee with this court and will award only that amount.

The court concludes that the remainder of attorney and paralegal time is reasonable. The court also concludes that the requested hourly rates of $300 and $75 are reasonable. Consequently, Plaintiff will be awarded $300 per hour for 180.16 hours; $75 per hour for six hours of paralegal time; and $250 for expenses.

-10-

### III.  CONCLUSION

For the reasons discussed above, the court concludes that Plaintiff is entitled to reasonable prejudgment interest, attorney's fees, and expenses.  As set forth in more detail above, the court will award prejudgment interest of $6,123.50, attorney's fees of $54,498.00, and expenses of $250.00.  The court will enter a separate final order of judgment consistent with this memorandum opinion.

DATED this 2nd day of May, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE